**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| SETH OLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-00114-TWP-KMB |
| | ) | |
| HEARTLAND PAYMENT SYSTEMS, LLC (D/B/A GLOBAL PAYMENTS), | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND ADMONISHMENT TO *PRO SE* PLAINTIFF**

This matter is before the Court on Defendant Heartland Payment Systems, LLC's ("Heartland") Motion to Dismiss (Dkt. 69). In his Second Amended Complaint, *pro se* Plaintiff Seth Olson ("Olson") asserts claims against Heartland, under the Americans with Disabilities Act ("ADA") for failure to accommodate, hostile work environment/constructive discharge, retaliation, and interference. For the reasons explained below, Heartland's Motion is **granted in part** and **denied in part**. Olson's failure to accommodate and hostile work environment claims are **dismissed with prejudice**, but his retaliation and interference claims **shall proceed**. Olson is **admonished** not to file repetitive or frivolous motions, and to ensure that his filings comply with all applicable rules.

## I. BACKGROUND

### A. Factual Background

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Second Amended Complaint and draws all inferences in favor of Olson as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Heartland is a limited liability company that provides payment processing and technology assistance. (Dkt. 64 at 2). Olson was employed by Heartland as a Senior Technical Trainer. *Id*. Sometime in 2023, Olson "disclosed a qualifying disability" and requested accommodations, including uninterrupted work time, written instructions, and structured check-ins. *Id.* Olson's supervisor and a senior leader "acknowledged [Olson's] disability" but failed to implement the requested accommodations or "engage in the good-faith interactive process." *Id.*

Shortly after Olson requested accommodations and an "EEOC engagement," Heartland placed Olson on a Performance Improvement Plan ("PIP") and reassigned Olson to "hostile supervision" with increased workload and increased stress. *Id.*

Then, after Olson initiated this lawsuit, Heartland "escalated" its conduct by contacting Olson "via personal channels" despite his request to only be contacted in writing through Heartland's counsel. *Id.* at 3. Two Heartland employees then "pressed [Olson] to complete [a] health questionnaire without adequately advising of rights" or relating the questionnaire to Olson's disability or accommodations. Heartland also "removed [Olson] from class late in the evening and re-exposed [him] to the same hostile supervision." *Id.*

On July 23, 2025, Olson's access to Heartland's internal systems was revoked, and his request for paid sick leave (versus unpaid leave) was denied, despite paid leave being available. *Id.* Olson was told "not to worry about logging into his work systems," but was also told that he "would be deemed to have abandoned his job and terminated effective October 1, 2025." *Id.* Olson alleges that the hostile supervision and lack of accommodations created a psychologically harmful environment," which led to his constructive discharge.

Olson asserts four claims against Heartland under the ADA. First, he claims that Heartland failed to accommodate his disability. *Id.* Second, he claims that Heartland retaliated against him

by placing him on a PIP, reassigning him to a "hostile" supervisor, denying his request for paid sick leave, removing him from class, and escalating its scrutiny of his work. *Id.* at 4. Third, he claims that Heartland interfered with the exercise of his ADA rights by corresponding directly with him (rather than through counsel), "leveraging HR and leave administration communications," and threatening to terminate him during this litigation. *Id.* And fourth, he claims that Heartland's failure to accommodate his disability, "combined with [its] retaliatory and coercive conduct," created a hostile work environment that led to his constructive discharge. *Id.*

**B. <u>Procedural History</u>**

Olson initiated this action in June 2025 (Dkt. 1). After Heartland appeared and sought an extension of time to answer the original Complaint, Olson moved for leave to file a first Amended Complaint, which added allegations of Heartland's conduct after the original Complaint was filed (Dkt. 28). Olson then filed several other ancillary motions, including a motion to e-file, motion for sanctions, motion for judicial oversight, "motion for court assistance," two motions for protective orders, and a motion to compel. Olson was granted leave to file using the Court's Web Portal and to file an Amended Complaint (Dkt. 37, 42), but denied the other motions.

In September 2025, Heartland moved to dismiss the Amended Complaint (Dkt. 46). Once that motion was fully briefed, Olson filed a motion for preliminary injunction (which was denied, Dkt. 52), followed by a Motion for Leave to File Second Amended Complaint (Dkt. 53), motions for sanctions and to disqualify counsel (which have also been denied, Dkt. 73), and several other notices, addenda, and supplements.

On November 3, 2025, over Heartland's objection, Olson was granted leave to file the Second Amended Complaint, which is now the operative pleading (Dkts. 63, 64). In that ruling, Olson was informed that "because this is Plaintiff's third attempt to plead his claims, the Court does not anticipate granting Plaintiff further leave to amend his complaint absent extraordinary

circumstances." *Id.* at 2. Heartland then filed the instant Motion to Dismiss the Second Amended Complaint which is fully briefed and ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

The Court will first discuss Olson's claims for failure to accommodate and hostile work environment/constructive discharge, because those claims must be dismissed for the same reason. The Court will then address Olson's claims for retaliation and interference.

### A. Failure to Accommodate and Hostile Work Environment/Constructive Discharge

Olson's failure to accommodate and hostile work environment/constructive discharge claims both fall under the ADA's anti-discrimination provision. That provision prohibits an employer from discriminating against a "qualified individual" based on "disability" as to that individual's "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination on the basis of "terms, conditions, and privileges of employment" includes creating a hostile work environment. *See Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) (stating hostile work environment claims are actionable under § 12112(a)). The ADA's anti-discrimination provision also defines discrimination, in part, as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." *Id.* § 12112(b)(5)(A).

Heartland argues that Olson's failure to accommodate and hostile work environment claims should be dismissed for several reasons, but the Court need only address one of those reasons—Olson fails to adequately plead that he is a "qualified individual" with a "disability." Heartland first argues that the Second Amended Complaint fails to allege that Olson is a qualified individual with a "disability" because it fails to identify his disability. Heartland is correct that "'a plaintiff alleging discrimination on the basis of an actual disability under [the ADA] must allege a specific disability.'" (Dkt. 69-1 at 6 (quoting *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015))). However, Olson's response brief clearly identifies his disability as Attention-Deficit/Hyperactivity

Disorder, and the Court is free to consider materials or elaborations in a response brief "so long as those materials or elaborations are 'consistent with the pleadings.'" *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017); *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free . . . to allege without evidentiary support any facts he pleases that are consistent with the complaint . . . ."); *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (listing cases reversing dismissals based on new elaborations). The elaboration in Olson's response (and in another earlier filing, Dkt. 47 at 2) are sufficient to identify Olson's disability and "give [Heartland] the notice to which [it] is entitled." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001).

The Court nevertheless agrees with Heartland's next argument, that Olson fails to adequately plead that he is a "qualified individual." (Dkt. 69-1 at 6). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Even construing the Second Amended Complaint liberally and considering the elaborations in Olson's response, the Court cannot discern what the essential functions of a Senior Technical Trainer are, or whether Olson is qualified to perform those functions with or without reasonable accommodations. *See Lee v. Chi. Transit Auth.*, No. 12-cv-9180, 2016 WL 6680483, at *4 (N.D. Ill. Nov. 14, 2016) (dismissing *pro se* plaintiff's third amended complaint with prejudice because, in part, plaintiff failed to allege "what his job duties were, which duties he could perform, and which duties he could not perform due to his health issues"); *Mack v. Chi. Transit Auth.*, No. 17 C 6908, 2020 WL 3414952, at *3 (N.D. Ill. June 22, 2020) ("In the ADA context, simply pleading that one is a qualified individual with a disability is precisely the type of conclusory, formulaic assertion that was disapproved of by *Twombly*." (citation modified)). For that reason, the Motion to Dismiss is

**granted** as to Olson's failure to accommodate and hostile work environment/constructive discharge claims.

The Court must now determine whether these claims should be dismissed with prejudice, or whether Olson should be given further leave to amend. As explained in the November 3, 2025 Order, Olson has already had two attempts to amend his complaint, and "the Court does not anticipate granting [Olson] further leave to amend his complaint absent extraordinary circumstances." (Dkt. 63 at 2).

Federal Rule of Civil Procedure 15(a)(2) permits a court to grant leave to amend "when justice so requires." However, leave to amend may not be appropriate if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Olson amended his complaint twice over the course of approximately four months. Importantly, Olson asked for leave to file his Second Amended Complaint following full briefing on Heartland's motion to dismiss the first Amended Complaint, which identified several deficiencies in Olson's pleading, including its failure to allege Olson is a "qualified individual" (Dkt. 46-1 at 4–5). Despite the benefit of this briefing, the Second Amended Complaint fails to even mention this crucial element of Olson's ADA claims. Olson's repeated failure to cure the deficiencies raised by Heartland warrants denial of further opportunities to amend. Olson's failure to accommodate and hostile work environment claims are therefore **dismissed with prejudice**.

**B. <u>Retaliation and Interference Claims</u>**

Olson's remaining claims are for retaliation and interference. Section 12203 of the ADA prohibits "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . or participated

in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). The same provision also makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by [the ADA]." *Id.* § 12203(b).

To assert a claim for ADA retaliation, Olson must allege: (1) he engaged in protected activity; (2) Heartland took adverse action against him; and (3) the protected activity caused the adverse action. *Brooks v. City of Pekin*, 95 F.4th 533, 539 (7th Cir. 2024). For an ADA interference claim, Olson must allege: (1) he engaged in protected activity; (2) he was engaged in the exercise or enjoyment of rights protected by the ADA; (3) Heartland coerced, threatened, intimidated, or interfered on account of his protected activity; and (4) Heartland was motivated by an intent to the Court

activities are those statutorily protected under the ADA, including opposing or complaining about discrimination," *Frakes*, 872 F.3d at 551, and "seeking an accommodation," *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015).

Heartland argues that Olson's retaliation and interference claims are deficient for three reasons: Olson does not allege he engaged in protected activity; he does not allege Heartland's actions were materially adverse; and he does not adequately allege a pattern of harassment to support an interference claim (Dkt. 69-1 at 1–2). The Court will address each argument in turn.

First, as to protected activity, Heartland argues that "[w]hile Olson claims he made 'accommodation requests and EEOC engagement,' his claim still does not include allegations of a legally cognizable disability or that his request for accommodation was reasonable. Thus . . . [he] continues to fail to put Heartland on notice of what protected activity he claims to have engaged

in." (Dkt. 69-1 at 8 (internal citation omitted)). Heartland fails to support this argument with any analysis or authority and this argument is unpersuasive.

To start, Heartland ignores that the filing of Olson's internal discrimination complaint, EEOC charge, and this lawsuit are protected activities. Further, the ADA's anti-retaliation provision does not apply solely to "qualified individuals with a disability," and no Seventh Circuit caselaw requires a plaintiff claiming retaliation to allege a disability. Indeed, the Seventh Circuit has repeatedly held that even if a plaintiff cannot show he is a qualified individual with a disability, he may still pursue a retaliation claim. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010) ("The fact that [the plaintiff] is not disabled under the ADA is not fatal to his retaliation claim."). *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) ("The [ADA] prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim."). Likewise, no binding precedent requires a plaintiff, at the pleadings stage, to prove that requested accommodations are reasonable to plead that his request was protected activity. *Preddie*, 799 F.3d at 814–15 (describing "seeking *an* accommodation" as a protected activity (emphasis added)). Olson's allegations that he requested accommodations, filed an internal discrimination complaint, contacted the EEOC, and filed this lawsuit, are sufficient to allege that Olson engaged in protected activity.

Second, as to adverse retaliatory actions, Olson alleges that shortly after he complained about discrimination and filed an EEOC charge, Heartland placed him on a PIP, reassigned him, subjected him to "hostile supervision," and increased his workload (Dkt. 64 at 2–3; Dkt. 70 at 6). Olson further alleges that after he initiated this lawsuit, Heartland employees began contacting him directly, pressured him into completing a health questionnaire, forced him to take unpaid leave,

removed him from a class late at night, locked him out of Heartland's systems, and gave him conflicting information regarding his resignation/termination (Dkt. 64 at 2–3; Dkt. 70 at 4).

Heartland argues that these actions were not sufficiently adverse because Heartland was not prohibited from taking some of these actions (like contacting Olson directly and requesting medical information), and because the actions did not create a "significant change in employment status.'" (Dkt. 69-1 at 9 (quoting *Herrnreiter v. Chi. Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002)); Dkt. 71 at 8).

The Court disagrees with Heartland. At this stage of the proceedings, construing Olson's Second Amended Complaint liberally and drawing all reasonable inferences in Olson's favor, the Court finds that Olson has adequately alleged materially adverse conduct. Retaliatory conduct need not be prohibited by regulation or statute to be materially adverse. Heartland cites several cases finding that some of the actions alleged—*e.g.*, placing an employee on a PIP, job reassignments, increased workload—were not sufficiently adverse to sustain an ADA retaliation claim (Dkt. 69-1 at 9–10). But all these cases were decided on summary judgment. Here, the parties have not yet engaged in discovery, and Olson's burden under Rule 12(b)(6) is much lower than under Rule 56. The Court cannot say at this preliminary stage that the Second Amended Complaint fails to plausibly allege materially adverse conduct.

Third, Heartland argues that Olson fails to sufficiently allege discriminatory intent (Dkt. 69-1 at 10). To adequately allege discriminatory intent for an ADA interference claim, the plaintiff must show a "pattern of harassment, invidiously motivated." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009); *see Shaw v. Williams*, No. 16-cv-1065, 2018 WL 3740665, at *11 (N.D. Ill. Aug. 7, 2018) ("[A] plaintiff must show that the defendant's actions reveal a discriminatory pattern

of harassment and an intent to discriminate based upon the plaintiff's membership in a protected class—those with disabilities.").

The Court again disagrees with Heartland and finds that Olson has satisfied this element. There is no strict formula for deciding what conduct can show discriminatory intent for an ADA interference claim, particularly at the pleadings stage. "The statutory term 'interfere with' is broader than retaliation, and captures 'all practices which have the effect of interfering with the exercise of rights' under the ADA." *Kelly v. Town of Abingdon*, 90 F.4th 158, 171 (4th Cir. 2024) (quoting *Brown v. City of Tuscon*, 336 F.3d 1181, 1191 (9th Cir. 2003)); *Malcorvian v. County of Cook*, No. 23 C 3987, 2024 WL 1530473, at *3 (N.D. Ill. Apr. 9, 2024) ("While [the plaintiff] did not use the words 'coerce,' 'threaten,' 'intimidate,' or 'interfere' in the charge, no magic words are required to meet the standard.").

Olson alleges a series of actions by Heartland that were not only intended to retaliate against Olson for engaging in protected activity, but also to interfere with enjoyment of his rights under the ADA and his efforts to vindicate those rights (Dkt. 64 at 2–4). This pattern of alleged conduct distinguishes this case from those in which the plaintiffs alleged only one (or no) instance of interference, which was not sufficient under Rule 12(b)(6). *Compare Deka v. Countryside Assoc. for People with Disabilities, Inc.*, 140 F. Supp. 3d 698, 710 (N.D. Ill. 2015) (denying motion to dismiss interference claim where plaintiff alleged that she applied for FMLA leave as an accommodation, employer made relevant comments around time of leave requests, and employer terminated plaintiff's health care and employment shortly after requesting FMLA leave but before plaintiff used the leave); *and Hale v. Senior Suites Chi. Midway Vill., LLC*, No. 25 C 7862, 2026 WL 1283953, at *7 (N.D. Ill. May 11, 2026) (denying motion to dismiss interference claim under Fair Housing Act, where plaintiff alleged "she requested documentation of an incident to request

an accommodation, and that defendants refused to provide incident documentation with the 'intent to discourage Plaintiffs from advocating for their housing rights'"); *with Rahran v. 2715 NMA LLC*, 161 F.4th 475, 485 (7th Cir. 2025) (affirming dismissal of interference claim in counseled case based on "one action enforcing defendants' 'neutrality' policy"); *Malcorvian*, 2024 WL 1530473, at *3 (dismissing interference claim in counseled case based on single "take-it-or-leave-it ultimatum" given by employer); and *Kelly*, 90 F.4th at 171 (dismissing interference claim in counseled case where plaintiff alleged that defendant's conduct exacerbated disability but did not affect plaintiff's ability to pursue protected activity).

Additionally, because the issue of Heartland's intent is a fact-intensive inquiry, not suitable for resolution at the pleadings stage, the summary judgment decisions cited by Heartland are not applicable (Dkt. 69-1 at 11). At this preliminary stage, giving Olson's Second Amended Complaint the liberal construction and reasonable inferences to which it is entitled, the Court finds that Olson has adequately alleged a plausible ADA interference claim. *See Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013) (reversing order granting motion to dismiss; "While we agree that [the plaintiff's] tale would undoubtedly seem more *probable* if he offered some reason for the . . . animus . . . , probability is not the standard." (emphasis in original)); *see also* Fed. R. Civ. P. 9(b) ("[I]ntent . . . may be alleged generally.").

Heartland's Motion to Dismiss the retaliation and interference claims is therefore **denied**.

## C. <u>Admonishment to Olson</u>

As a final matter, Olson is admonished regarding his future filings in this lawsuit. Olson has filed a series of premature, repetitious, and frivolous motions in this case, which is a drain on the Court's ability to process and consider this case and the other many cases pending before the Court. Some of Olson's motions may be meritorious, and Olson is entitled to litigate his remaining claims earnestly and receive the same attention and thoroughness afforded any other party. But he

is not entitled to monopolize the Court's resources by repeatedly filing motions. He also is not entitled to repeatedly present the same issues in search of a favorable ruling. "Every paper filed with the Clerk, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989); *see also United States ex rel. Verdone v. Cir. Ct. for Taylor Cnty.*, 73 F.3d 669, 671 (7th Cir. 1995) ("Frivolous, vexatious, and repeated filings by pro se litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit and filed by litigants willing to follow court orders."). Olson has previously been cautioned "that the filing of any additional frivolous, unsupported, or repetitive motions may warrant the imposition of sanctions, up to and including the potential dismissal of this lawsuit." (Dkt. 73 at 2). Olson is now formally **ADMONISHED** to be cautious in the future with his filings and to refrain from filing premature, repetitious, or frivolous motions.

Further, a review of Olson's briefs reveals that several cited cases are either miscited, cited for propositions they do not support, or do not exist (*see* Dkt. 71 at 10 n.1; *e.g.*, Dkt. 70 at 5, 7 (citing non-existent case "Hutt v. AbbVie, 2021 WL 3129261 (N.D. Ill. 2021)"; non-existent 2023 decision in "Scheurer v. Fromm Family Foods LLC, 63 F.4th 1011 (7th Cir. 2023)"; and non-existent quote from *Penn. State Police v. Suders*, 542 U.S. 129 (2004))); Dkt. 72 at 7 (incorrectly citing a summary judgment decision, *Rowlands v. United Parcel Serv.*, 901 F.3d 792 (7th Cir. 2018), for a proposition about Rule 12(b)(6))). These errors suggest that Olson may have used artificial intelligence ("AI") in preparing his filings. While the use of AI is not prohibited in this Court, "[a]ccuracy and honesty matter," and *pro se* litigants "must read their filings and take

reasonable care to avoid misrepresentations, factual and legal." *Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 970 (7th Cir. 2026). Federal Rule of Civil Procedure 11 provides, in part:

> (b) **Representations to the Court**. By presenting to the court a pleading, written motion, or other paper . . . [an] unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; . . . .

Fed. R. Civ. P. 11(b). The Court will not "allow a court filing to include misrepresentations on legal or factual points that an unrepresented party reasonably knows or should know exist." *Id.* at 971. Accordingly, Olson is **ADMONISHED** that he must ensure that all of his future filings **FULLY COMPLY** with all applicable Federal Rules of Civil Procedure and the Local Rules of this Court. Failure to do so may result in sanctions, including monetary sanctions, having filings stricken, and/or dismissal of this action.

## IV. CONCLUSION

For the reasons explained above, Heartland's Motion to Dismiss the Second Amended Complaint (Dkt. 69) is **GRANTED in part** and **DENIED in part**. Olson's claims under the ADA for failure to accommodate and hostile work environment/constructive discharge are **dismissed with prejudice**. Olson's claims under the ADA for retaliation and interference have survived the initial hurdle of a motion to dismiss and **may proceed**.

Olson is **admonished** to refrain from filing premature, repetitious, or frivolous motions and is **admonished** that all future filings must comply with the Federal Rules of Civil Procedure

and the Local Rules of this Court. Olson should review the resources provided for *pro se* litigants on the Court's website,[1] as well as the Southern District of Indiana Local Rules.[2]

**SO ORDERED**.

Date: September 8, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

SETH OLSON
3312 Mellwood Dr.
New Albany, IN 47150

Nathan D. Chapman
Kabat Chapman & Ozmer LLP
nchapman@kcozlaw.com

Sharada Jambulapati
Kabat Chapman & Ozmer LLP
sjambulapati@kcozlaw.com

Patrick Muldoon
BARNES MALONEY PLLC
pmuldoon@sbmkylaw.com

Justin M. Schaefer
BARNES MALONEY PLLC
jschaefer@sbmkylaw.com

[1] https://www.insd.uscourts.gov/guides-forms-all-other-civil-claims

[2] https://www.insd.uscourts.gov/local-rules